IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.                              CASE NO. 5:15-CR-50060

LARRY JESUS NAVARETE
a/k/a LARRY NAVARRETE
a/k/a NICA
and
GUADALUPE DURAN
a/k/a GUADALUPE NAVARRETE
a/k/a ISABEL NAVARRETE                                                     DEFENDANTS

### MEMORANDUM OPINION AND ORDER

The Defendants in this case, Larry Jesus Navarete and Guadalupe Duran, have been charged in a seven-count Superseding Indictment (Doc. 32) with a variety of felonies concerning the alleged distribution of methamphetamine and laundering of the financial proceeds therefrom. The trial of this matter is set to begin on August 29, 2016. (Doc. 48, p. 1). The Court conducted a pretrial hearing yesterday on August 11, 2016. At the time the hearing began there were sixteen motions pending, all of which had been filed by either Mr. Navarete or Ms. Duran. During the hearing the Court heard oral argument on ten of those pending Motions that had been fully briefed and were ripe for decision. *See* Defendants' Motions at Docs. 50–55, 64–67; Government's Responses at Docs. 57–61, 73–76.

This Opinion and Order memorializes and explains the bases for the rulings the Court made from the bench on those Motions. To the extent that there is any conflict between the Court's rulings from this bench and this written Order, the written Order shall

control. The ten Motions are organized for analytical ease into five separate categories below.

1. **Appearance in civilian clothing without restraints (Docs. 51, 67).**

Both Defendants wish to appear in civilian clothing and without restraints at trial, as well as at the pretrial conferences. The Government does not oppose civilian clothing for either Defendant or the absence of restraints for Ms. Duran, but it *does* oppose the absence of restraints for Mr. Navarete on the grounds that "during the course of this investigation, threats made and discussed by [Mr. Navarete] were intercepted," and that "[a]s a result, law enforcement had to intervene on these occasions, to prevent individuals from being kidnapped, harmed, and even to prevent an individual from being killed in one instance." (Doc. 58, p. 2).

The Supreme Court has indicated that "shackling" is an "inherently prejudicial practice that . . . should be permitted only where justified by an essential state interest specific to [the] trial," so as to protect the presumption of innocence that attaches to all criminal defendants in our justice system. *See Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986). The Court believes the unique circumstances of this case justify the use of restraints on Mr. Navarete, so long as appropriate measures are taken to prevent the jury from ever seeing the restraints, and so long as the restraints do not encumber his ability to interact with counsel. Therefore, the Court has arranged for the United States Marshal to outfit Mr. Navarete with a remote-activated "stun belt" to be worn beneath Mr. Navarete's clothes, in a manner that should not be visible to anyone. The Court will also encircle both counsel tables in the courtroom with floor-length drapes, so that if the stun belt proves inadequate such that more highly visible restraints become necessary, the

jury's view of any such restraints will still be obstructed. Accordingly, Ms. Duran's Motion at Doc. 67 is **GRANTED** and Mr. Navarete's Motion at Doc. 51 is **GRANTED IN PART AND DENIED IN PART**, though the Court will certainly revisit these issues as necessary throughout trial, either at the parties' request or *sua sponte*.

2.     Disclosure of Brady/Giglio/Jencks material (Docs. 50, 64).

The Jencks Act states that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). As an act of Congress, this requirement may only be overridden, of course, to the extent that it is inconsistent with the Constitution. Here, Defendants argue that it would violate their fundamental due process rights if the Government were to wait until after direct examination to disclose Jencks material to the defense, bringing such materials within the ambit of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1963). In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. And in *Giglio*, the Supreme Court clarified that the rule announced in *Brady* encompasses "evidence affecting credibility" of Government witnesses, including offers of leniency in exchange for cooperation, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence." 405 U.S. at 154 (internal quotation marks omitted).

The Government says that "[o]ther than what has previously been provided in response to the defendant[s'] motion for discovery, at this time, the United States has no evidence in its possession which is favorable to the defendant[s] on the issue of guilt or punishment." (Doc. 57, p. 1; Doc. 73, p. 1). It appears, then, that the only true point of contention here is whether the Government should be required, on Constitutional grounds, to make early disclosure of its witnesses' prior statements or reports ("Jencks materials"), and if so, then how early.

The most recent Amended Pretrial Scheduling Order in this case requires the Government to provide copies of its witness and exhibit lists to the Court and Defendants "by no later than Noon on August 25, 2016," (Doc. 48, p. 2) (emphasis removed), which is two days after the final pretrial conference and four days prior to the beginning of trial, *see id.* at 1. The Government represents that it intends to provide Jencks materials to Defendants at the same time that it complies with the witness- and exhibit-list deadline, which would be well in advance of when the Jencks Act requires such disclosure. Defendants would prefer to receive these materials *now*, but they have not provided any authority that would support such an order for such an early disclosure. They cite only two cases from outside the Eighth Circuit that are easily distinguishable: one held that a defendant was deprived of his constitutional right to counsel when his attorney failed to request a recess in order to examine Jencks material that was provided after direct examination, *see United States v. Hinton*, 631 F.2d 769, 781–82 (D.C. Cir. 1980), and the other held under case-specific circumstances that one day before trial was insufficient time for defense counsel to have a reasonable opportunity to absorb the material and make use of it, *United States v. Holmes*, 722 F.2d 37, 40–41 (4th Cir. 1983). The instant

4

case involves voluminous discovery and potentially somewhere in the range of thirty to forty Government witnesses, but the Court believes that four days before the beginning of trial is sufficient time for defense counsel to digest and make reasonable use of witnesses' identities and Jencks material here. Therefore, the Defendants' Motions at Docs. 50 and 64 are **DENIED**.

3. **Disclosure of contact between the Government and jailhouse informants (Docs. 52, 65).**

Both Defendants seek immediate disclosure of all contacts between the Government and jailhouse informants, and argue generally that this is necessary because they wish to have the opportunity to move for potential jailhouse-informant testimony to be suppressed on the grounds that it is inherently unreliable and lacking in credibility. The Government responds that it has not planted any informants in the jails where the Defendants have been held, and that, as noted above, it intends to provide the Defendants the identities and Jencks materials for all of its potential witnesses on August 25, in accordance with this Court's earlier Order. (Doc. 59, p. 2; Doc. 74, pp. 1–2). The Court has the discretion to exclude substantially misleading evidence, see Fed. R. Evid. 403, and the Eighth Circuit has helpful model jury instructions that may be read concerning testimony given under grant of immunity or plea bargain, and testimony of accomplices, cooperating witnesses, and informers. See 8th Cir. Model Crim. Jury Instr. §§ 4.04, 4.05A, 4.05B, 4.06 (2014). Given the availability of these tools, along with the Court's ruling in the preceding Section of this Order regarding Jencks materials, the Court sees no reason to take the determination of credibility out of the jury's hands, absent very compelling circumstances which do not presently appear to exist here. Therefore, the Defendants' Motions at Docs. 52 and 65 are **DENIED**.

4.  **Out-of-court statements by co-conspirators, etc. (Docs. 53, 54, 66).**

Fed. R. Evid. 801(d)(2)(E) provides that a statement offered against an opposing party that was "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. The Eighth Circuit has held that in order for a statement to qualify as admissible under this rule, "the government must show by a preponderance of the evidence (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Whitlow*, 815 F.3d 430, 434 (8th Cir. 2016) (internal quotation marks omitted). To prove the existence of the conspiracy, the 801(d)(2)(E) statements must be corroborated by independent evidence, which may be entirely circumstantial. *Id.* The Eighth Circuit has also held that "[a] court may conditionally admit a coconspirator statement subject to later proof of the conspiracy to satisfy the coconspirator rule and defer a final ruling on its admissibility until after hearing all of the evidence." *United States v. Young*, 753 F.3d 757, 771 (8th Cir. 2014). The Government here would prefer to go the latter route, while the Defendants would prefer that the Court require the Government to satisfy all three elements *before* being permitted to introduce any 801(d)(2)(E) statements. Mr. Navarete would prefer to go even further, and have a separate hearing on the admissibility of such statements before the trial even occurs.

Because of the unusual complexity of this case, the Court has already held more hearings, and entertained far more motions, than is typical. Since district courts in the Eighth Circuit have the discretion not to hold separate pretrial hearings on 801(d)(2)(E) issues, and given the logistical nightmares that such a hearing would likely entail in this

6

case, the Court is unwilling to go so far as Mr. Navarete requests. However, the Court is sensitive to defense counsel's concern that if the Government were ultimately unable to meet its burden under the Rule after 801(d)(2)(E) statements were provisionally admitted, then it would be very difficult, realistically speaking, for a curative instruction to "unring the bell." On the other hand, the Court is also mindful that the Government's burden on this issue is rather low—a preponderance of the evidence, which may be entirely circumstantial—as well as of the need to avoid confusing the issues for the jury. *See Whitlow*, 815 F.3d at 434.

Accordingly, Defendants' Motions at Docs. 53, 54, and 66, will be **GRANTED IN PART AND DENIED IN PART** as follows: the Government is instructed not to make any references in front of the jury (during opening statements or otherwise) to any 801(d)(2)(E) statements until they have obtained leave from the Court—at sidebar or otherwise outside the presence of the jury—to do so. The Court will provide such leave upon request of the Government, after there is sufficient evidence in the trial record from which the Court may determine there is a reasonable likelihood that the Government will have satisfied its 801(d)(2)(E) burden by the close of trial. If Defendants believe at the close of evidence that the Government has failed to meet its 801(d)(2)(E), then the Court will of course entertain motions for a finding to that effect, curative instructions, mistrial, or whatever other relief Defendants believe is appropriate.[1]

---

[1] Accompanying Mr. Navarete's briefing on this issue are arguments that he should immediately be given impeachment materials for any 801(d)(2)(E) declarants, (Doc. 53, ¶ 7), which are subject to the same *Brady/Giglio*/Jencks analysis provided above in Section 2 of this Order and Opinion, and which the Government says it will provide in the same manner as was discussed in that same Section, (Doc. 60, p. 3). Mr. Navarete also states without elaboration that he seeks production of "*Bruton* . . . materials," (Doc. 54, p. 1), by which the Court assumes he is referring to codefendant confessions as discussed

5.   **Impeachment of Mr. Navarete's testimony with prior convictions (Doc. 55).**

In the event that Mr. Navarete testifies at trial, he wishes for the Court to prohibit the Government from impeaching his character for truthfulness with evidence of his prior convictions under Fed. R. Evid. 609(a)(1)(B) and (a)(2). This Rule states that evidence of felony convictions "*must* be admitted in a criminal case in which the witness is a defendant, *if* the probative value of the evidence outweighs its prejudicial effect to that defendant," Rule 609(a)(1)(B) (emphasis added), or "*if* the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting— a dishonest act or false statement," Rule 609(a)(2) (emphasis added). It appears from the briefs that the parties agree that none of Mr. Navarete's convictions required proving or admitting dishonesty or falsehood, and that therefore the question before this Court is whether the probative value of Mr. Navarete's prior convictions outweigh their prejudicial effect.

In its brief, the Government bases its entire argument for the probative value of Mr. Navarete's prior felony convictions on its need to prove that Mr. Navarete was in the same prison on the same dates as the phone that was subjected to wiretaps in this case, thereby corroborating the Government's proof that Mr. Navarete is the individual who committed the crimes for which he will soon be tried. However, this argument for probative value strikes the Court as being more in the nature of one that is typically made for the admission of prior-crimes evidence under Rule 404(b) than under Rule 609. "The

---

in the Supreme Court case of *Bruton v. United States*, 391 U.S. 123 (1968), which, under the instant circumstances, also falls within the *Brady/Giglio*/Jencks analytical framework. These requests are **DENIED** in the same manner, and for the same reasons, provided in Section 2, *supra*.

probative character of evidence under Rule 609 has to do with *credibility of a witness*, while 404(b) 'probativeness' essentially goes to the question of whether or not the accused committed the crime charged. Any similarity or overlap in the standards of admissibility under the respective rules is irrelevant because the rules apply to completely distinct situations." *United States v. Valencia*, 61 F.3d 616, 619 (8th Cir. 1995) (emphasis added). This is an important distinction, because Mr. Navarete has not moved for exclusion of 404(b) evidence; he has moved for exclusion of 609 evidence. Regardless of whether Mr. Navarete testifies, the Government will almost certainly need to prove that he was operating the subject phone, but that fact on its own is not necessarily probative of his *credibility as a witness* if he takes the stand.

    The Court believes it does not have sufficient information or context at this time to accurately assess the probative value of Mr. Navarete's prior convictions for his credibility as a witness. It is likely that the content of Mr. Navarete's testimony under direct examination would play a significant role in performing such an assessment. For example, it seems quite clear that if Mr. Navarete were to testify on direct that he has never before been convicted of a felony, or if he admitted his prior felony convictions but attempted to minimize guilt, then it would almost certainly be proper for the Government to cross-examine him about the facts of his prior convictions as a means of impeaching his testimony. *See Valencia*, 61 F.3d at 619. But without knowing how Mr. Navarete would testify under direct examination, the Court is unwilling to prejudge this issue. Therefore, the Court will **DEFER RULING** on Mr. Navarete's Motion at Doc. 55.

6.　　**Conclusion.**

**IT IS THEREFORE ORDERED** that Guadalupe Duran's Motion at Doc. 67 is **GRANTED**, Ms. Duran's Motion at Doc. 66 is **GRANTED IN PART AND DENIED IN PART**, Larry Jesus Navarete's Motions at Docs. 51, 53, and 54 are **GRANTED IN PART AND DENIED IN PART**, the Defendants' Motions at Docs. 50, 52, 64, and 65 are **DENIED**, and the Court will **DEFER RULING** on Mr. Navarete's Motion at Doc. 55.

**IT IS SO ORDERED** on this ___12th___ day of August, 2016.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE